UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MICHIGAN MILLERS MUTUAL INSURANCE CO.
and GRAND RIVER COOPERATIVE,

        Plaintiffs,

    v.                                            Case No. 04-C-853

HAMILTON BEACH / PROCTOR SILEX, INC,

        Defendant.

## DECISION AND ORDER

In this diversity action, Michigan Millers Mutual Insurance and Grand River Cooperative seek to recover from Hamilton Beach / Proctor Silex for a fire at the Grand River feed mill allegedly caused by a coffee maker manufactured by the defendant. The defendant has moved to exclude the testimony of one of the plaintiff's experts on the basis that the testimony fails to meet the criteria set forth in Fed. R. Evid. 702 as well as the tenets of the Supreme Court's decision in *Daubert v. Dow Merrell Pharmaceuticals, Inc.,* 509 U.S. 579 (1993). On the same grounds, the defendant claims summary judgment is appropriate. For the reasons stated below, the motion is denied.

A fire broke out at the Grand River mill in Markesan, Wisconsin, on the morning of August 8, 2002. The fire was centered in the mill's employee break room, and the fire department was unable to determine the cause of the fire. Grand River's insurer, Michigan Millers, hired an investigation firm to determine the cause. Paul Kelm led the team and concluded that the fire began on the east side of the break room, near a cart upon which the coffee maker rested. Paul Hansen, the expert whose testimony the defendant seeks to exclude, also investigated the fire on behalf of

the plaintiffs, concluding that a "thermal runaway" inside the coffee maker was the fire's cause. This conclusion was based in part on melting and/or heat exposure observed in parts of the coffee maker's glass carafe, the extent of which indicated to Hansen that the coffee maker was the fire's source. It was also influenced by the fact that Hansen and Kelm were able to rule out all or most of the other possible electrical devices present in the area of the fire. In particular, Hansen's theory is that the coffee maker was left on all day and night and that the machine's thermal cutoff devices failed.

The defendant claims that Hansen's opinion is suspect and should not be allowed to go before a jury. Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702; *see also Daubert,* 509 U.S. 579. Most troubling for the defendant is the fact that Hansen never conducted any scientific testing on coffee makers like the one at issue in this case to show how the thermal runaway could have occurred. Nor did he test the actual coffee maker that he alleges caused the fire. The defendant relies largely on *Chapman v. Maytag Corp.,* 297 F.3d 682 (7th Cir. 2002), in which the Seventh Circuit emphasized the importance of testing. The court described the expert's conclusions as follows:

> Petry [the expert] concluded that the insulation enclosing the pinched wire eventually became compromised, allowing a fatal amount of electrical current to "leak through" the insulation of a 120 volt wire without tripping a 20-amp circuit breaker. He further hypothesized that this leakage occurred for weeks prior to the accident, without completely destroying the insulation or causing a direct short. Consequently, according to Petry, the grounding of the receptacle would not have prevented the electrocution. In response, Maytag argued that Petry was not qualified

2

> to offer such an opinion about electricity because: he does not have sufficient knowledge or experience in the field, he has no graduate training in electrical engineering, he does not attend education classes or seminars regarding electrical engineering, he has never published or lectured in the field of electrical science or engineering, and he has never previously testified as an expert on electrical issues. Maytag further argues that Petry never offered any study or writing to back up his theory and more specifically, he could not substantiate his opinion that it is even possible for a fatal amount of electrical current to "leak through" the insulation to an uninsulated surface without tripping the circuit breaker. Maytag asserts that Petry could not even show that the scientific community recognizes the concept of a "resistive short" or the principles on which this purported phenomenon is based.

*Id.* at 687.

The court concluded, among other things, that "[i]n our opinion, the absence of any testing indicates that Petry's proffered opinions cannot fairly be characterized as scientific knowledge. Personal observation is not a substitute for scientific methodology and is insufficient to satisfy Daubert's most significant guidepost." *Id.* at 688. Based on this finding, the defendant in this case believes Hansen's lack of testing is fatal.

But in *Chapman,* the court was dealing with an expert's "resistive short" theory, which the court described as "novel and unsupported by any article, text, study, scientific literature or scientific data produced by others in his field." *Id.* In that sense, testing would be crucial to ensure that the theory was even a possibility. In contrast, in this case the thermal runaway theory is well known in the community and, as the plaintiffs point out, was even the cause of a product recall for the defendant, albeit in different circumstances. (Schober Aff., Ex. A: "The company believes that thermostats and thermal fuses purchased by Proctor-Silex for use in the coffee maker may both malfunction causing overheating and a potential fire hazard.")

The defendant also relies on *Kirstein v. Parks Corp.,* 159 F.3d 1065 (7th Cir. 1998), a case in which an expert failed to conduct any tests on his theory that an adhesive remover was dangerous when used in combination with laquer thinner. In that case, however, the court described the

3

expert's theory as a "rather protean theory," expressing some skepticism in light of the fact that the theory had changed several times throughout the course of the litigation. *Id.* at 1067. More importantly, such a theory would be quite easily testable by simply combining the two products. As the court noted, "their claim against Parks depends on the combination of the Parks' adhesive remover with lacquer thinner. If there is no evidence of how the products operate in combination, there can be no claim." *Id.* at 1068. Thus, in that case the lack of testing was an obvious flaw that undercut the plaintiff's entire case. But here, once again, the contrast is marked: the theory of causation is not particularly novel, and it does not depend on the testing of a hypothesis (e.g., if certain chemicals are mixed, they will become dangerous) that could easily be accomplished.

The defendant also cites *Weisgram v. Marley Co.,* 169 F.3d 514 (8th Cir. 1999), but the analogy once again is not particularly strong. There, a fire captain testified that the fire started because "'we had a malfunction of the heater'" . . . notwithstanding [his] admission that he was 'not an electrical expert' and that he did not 'know what happened with the heater[;]' he nevertheless was allowed to testify that he "'believe[d] that we had a runaway of that heater.'" *Id.* at 518. That scenario does not resemble the witness in this case, an electrical engineer testifying about an electrical malfunction, and the case's relevance is therefore quite weak.

Finally, the defendant's reference to *Pride v. BIC Corp.,* 218 F.3d 566 (6th Cir. 2000) is not persuasive. There, while the expert's failure to test was significant, the court seemed more persuaded by the fact that the expert's theory was actually *contradicted* by the physical evidence in the case. *Id.* at 578. In short, the defect the expert alleged was the cause of the explosion was a condition that did not even exist, which meant that the expert's entire conclusion was wholly without any foundation. *Id.* In sum, under the facts of this case, I do not view the expert's failure to conduct tests as posing a barrier to his testimony.

4

In addition to claiming that Hansen's methodology was unscientific, the defendant also claims that the undisputed facts belie his theory of causation. In particular, it claims that there is no evidence that the coffee machine was even plugged in when the fire started; because a "live" coffee machine is a crucial premise of the plaintiff's theory, summary judgment must be granted to the defendant. But an absence of evidence that the machine was plugged in is not the same as the presence of conclusive evidence that the machine was *not* plugged in. The jury may express doubt, and the inability to prove either way may ultimately lead it to find for the defendant. But uncertainty about one of the premises of the expert's theory does not mean the jury cannot even reach that issue.

To be sure, the defendant has identified several problems with Hansen's theory. If the jury believes the coffee maker was not even in use, for example, it will discount the entire theory. If the jury cannot account for the fact that the thermal cutoffs were found in the open position, then it will also reject the theory. It might also conclude that melted glass in other areas of the break room casts doubt on Hansen's theory. But these flaws do not reflect the sorts of unscientific principles and methods *Daubert* and Rule 702 are intended to prevent from going to a jury; instead, they represent factual hurdles that a jury is properly equipped to sort out after hearing testimony and an opposing expert's viewpoint.

Accordingly, for the reasons given above, the motion to exclude and the motion for summary judgment are denied.

**SO ORDERED** this __6th__ day of April, 2006.

        s/ William C. Griesbach
        William C. Griesbach
        United States District Judge